**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 4:10-CV-1160 CAS<br>) |
| LAKE ASPHALT PAVING &<br>CONSTRUCTION, LLC, et al., | )<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on plaintiff Safeco Insurance Company of America's motion for partial summary judgment on Count IV for specific performance against defendants.[1] Defendants oppose the motion. For the following reasons, the Court will grant the motion for partial summary judgment and order defendants to pay or deposit collateral with plaintiff in the amount of $1,990,070.00 no later than September 8, 2011.

**I.  Background**.

This action arises out of payment and performance bonds issued by plaintiff Safeco Insurance Company of America ("Safeco"), as surety, and defendant Lake Asphalt Paving & Construction, LLC ("Lake Asphalt"), as principal, with respect to two construction projects. In connection with these projects, defendants entered into a General Agreement of Indemnity for Contractors ("Indemnity Agreement") with Safeco, under which defendants pledged to hold Safeco harmless from claims and

---

[1] Safeco's motion is not directed to defendant Donald G. Mantle. Safeco obtained a Clerk's Entry of Default against Mr. Mantle on January 31, 2011. Currently pending before the Court is Safeco's motion for entry of default judgment against Mr. Mantle.

other expenses incurred by Safeco in connection with the bonds. Lake Asphalt defaulted on both projects. Pursuant to its performance bond obligations, Safeco contracted with other companies to complete the projects.

Safeco asks the Court to grant summary judgment on Count IV of its complaint, which seeks specific performance of the portion of the Indemnification Agreement obligating defendants to post collateral security in the amount of Safeco's reserve—$1,990,070—to cover Safeco's potential liability under the bonds.[2] The motion calls on this Court to address the question of whether a surety is entitled to specific performance to enforce its contractual rights to collateral. For the reasons stated below, the Court finds that in this case Safeco is entitled to enforce the collateral security clause of the Indemnity Agreement through specific performance.

## II. Legal Standard.

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor).

---

[2]Originally, in its motion for partial summary judgment, Safeco sought collateral security in the amount of $2,890,270. At the time it posted this reserve, completion work on the two bonded projects had just started. Since that time, and after briefing on summary judgment closed, construction on both projects has been completed and certain contingencies that were budgeted for in the reserve have not occurred. Consequently, Safeco lowered its reserve to $1,990,070. See Supplement to Pl.'s Mot. for Partial Summ. J. (Doc. 79).

Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir.), cert. denied, 528 U.S. 1063, (1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

**III.    Facts.[3]**

On March 6, 2006, defendants Lake Asphalt; Gaines Leasing & Investment, LLC; Gaines Construction, Inc.; DGN, Inc.; William Gaines; Patricia Gaines; Keith A. Denney; Jeannie M. Denney; Michael L. Rogers; Sandra Rogers; and Harold E. Neumann executed the Indemnity Agreement in favor of Safeco.[4]  Safeco, as surety, issued performance bonds and payment bonds on behalf of defendant Lake Asphalt, as contractor, for various construction contracts including the following:

1.    Performance and Payment Bond No. 6546173 dated June 30, 2008, each in the penal sum of $4,053,658.61, with McAninch, Inc. as obligee, with respect to the Route 54, Camden County Job #J5P0309A and J5P0648A ("Route 54 Project").

2.    Performance and Payment Bonds No. 6475121 dated November 1, 2007, each in the penal sum of $3,750,610.42, with Progressive Contractors, Inc. as obligee, with respect to Route 36, Marion and Shelby County Job #J3P0409C and J3P0410 ("Route 36 Project").

In a letter dated March 4, 2010,  the general contractor on the Route 54 Project, McAninch Inc. ("McAninch"), declared Lake Asphalt to be in default and called upon Safeco to honor the obligations of its performance bond.  Lake Asphalt acknowledged to Safeco that it was unable to complete the performance of the work or comply with its contractual obligations to McAninch on the Route 54 Project and voluntarily abandoned that project.

---

[3]This statement of facts is taken from plaintiff's Statement of Uncontroverted Material Facts, filed with its motion for partial summary judgment.  See Doc. 53.  In response, defendants filed both a "Motion in Opposition to [Safeco's Motion for Partial Summary Judgment]" (Doc. 70) and a "Memorandum in Support of Motion in Opposition to [Safeco's Motion for Partial Summary Judgment]" (Doc. 71).  Neither document includes a statement of material facts as to which the party contends a genuine issue exists as required by Local Rule 4.01(E).  Defendants have not controverted plaintiff's Statement of Uncontroverted Material Facts, and therefore these facts are deemed admitted.  See E.D. Mo. L.R. 4.01(E).

[4]The Indemnity Agreement refers to the defendants as the "Undersigned."  Each of the individual defendants signed the Indemnity Agreement individually, and none have made any argument that they are not bound by the Indemnity Agreement.

Pursuant to its performance bond obligations, Safeco contracted with Magruder Paving, LLC ("Magruder") to complete the Route 54 Project. Safeco estimated there would be a shortfall of at least $1,549,885.12 between the remaining contract balances to be paid to Safeco by McAninch and the costs to complete the Route 54 Project. Safeco also estimated a potential for the assessment of liquidated damages and other expenses could total as much as $800,000.00.

In an e-mail dated March 17, 2010, the general contractor on the Route 36 Project, Progressive Contractors, Inc. ("Progressive"), directed Lake Asphalt to begin work on the Route 36 Project no later than March 29, 2010 and requested confirmation that Lake Asphalt could complete the work. Lake Asphalt acknowledged to Safeco that it was unable to complete the work or comply with its contractual obligations to Progressive on the Route 36 Project and voluntarily abandoned that project.

Pursuant to its performance bond obligations, Safeco contracted with Magruder to complete the Route 36 Project. Safeco estimated that there would be a shortfall of at least $225,405.85 between the remaining contract balances to be paid to Safeco by Progressive and the cost to complete the Route 36 Project. Safeco anticipated it would incur consultant and legal fees and expenses of $303,920.00 as a result of issuing the bonds and in conjunction with the completion of the bonded projects.

As of May 18, 2010, Safeco had set a reserve in the amount of $2,890,270.00. At the time of posting this reserve, completion work on the two bonded projects was just starting. Since that time, construction on both projects has been completed and certain contingencies that were budgeted for in the reserve have not occurred. After briefing on Safeco's motion for partial summary judgment closed, Safeco reduced its reserve to $1,990,070.00. Consequently, Safeco amended and reduced

its prayer for relief in Count IV to an order requiring defendants to provide cash or collateral in the amount of $1,990,070.00, the amount of Safeco's amended reserve. See Supplement to Pl's Mot. for Partial Summ. J. (Doc. 79).

The Indemnity Agreement obligates Indemnitors to pay Safeco, upon demand:

> 1. All loss, costs and expenses of whatsoever kind and nature, including court costs, reasonable attorney fees (whether [Safeco] at its sole option elects to employ its own attorney, or permits or requires [Indemnitors] to make arrangements for [Safeco's] legal representation), consultant fees, investigative costs and any other losses, costs or expenses incurred by [Safeco] by reason of having executed any Bond, or incurred by it on account of any Default under this agreement by any of the [Indemnitors], or by reason of the refusal to execute any Bond. In addition the [Indemnitors] agree to pay to [Safeco] interest on all disbursements made by [Safeco] in connection with such loss, costs and expenses incurred by [Safeco] at the maximum rate permitted by law calculated from the date of each disbursement.
>
> 2. An amount sufficient to discharge any claim made against [Safeco] on any Bond whether [Safeco] will have made any payment or established any reserve therefor. Such payment to be in the minimum amount of any reserve set by [Safeco]. This sum may be used by [Safeco] to pay such claim or be held by [Safeco] as collateral security against loss on any Bond. The [Indemnitors] acknowledge that their failure to pay, immediately upon demand, that sum demanded by [Safeco] will cause irreparable harm for which [Safeco] has no adequate remedy at law. The [Indemnitors] confirm and acknowledge that [Safeco] is entitled to injunctive relief for specific enforcement of the foregoing provision.

The Indemnity Agreement further provides in the GENERAL PROVISIONS section:

> The [Indemnitors] will, on request of [Safeco], procure the discharge of [Safeco] from any bond and all liability by reason thereof. If such discharge is unattainable, the [Indemnitors] will, if requested by [Safeco], either deposit collateral with [Safeco], acceptable to [Safeco], sufficient to cover all exposure under such bond or bonds, or make provisions acceptable to [Safeco] for the funding of the bonded obligation(s).

On May 18, 2010, Safeco demanded the defendants as indemnitors indemnify it for its payment of expenses through March 31, 2010 of $10,859 and provide cash or collateral security in the amount of its remaining reserve of $2,879,211 (as stated above, now reduced to $1,990,070) on

or before June 7, 2010. Defendants have not indemnified Safeco for any of its losses or expenses and have not provided any cash or acceptable collateral to Safeco in response to its demand.

**IV.     Discussion**.

    A.     The Indemnity Agreement

Pursuant to the terms of the Indemnity Agreement, defendants are required to pay Safeco, upon demand, "an amount sufficient to discharge any claim made against [it], whether [Safeco] will have made any payment or established any reserve therefor. Such payment to be the minimum amount of any reserve set by [Safeco]." Indemnity Agreement at 1. The payment may be used by Safeco as collateral security against any loss on the bonds. Thus, upon Safeco's demand, the defendants are required to pay funds to Safeco in the minimum amount of its reserve, and these funds may be held by Safeco as collateral security against loss on the bonds. Additionally, defendants agreed that if they could not procure the discharge of Safeco from any bond and all liability, defendants would "deposit collateral with [Safeco], acceptable to [Safeco], sufficient to cover all exposure under such bond or bonds, or make provisions acceptable to [Safeco] for the funding of the bonded obligation(s)." Id. at 2.

Defendants do not argue any ambiguity in the terms of the Indemnity Agreement. Nor do they dispute that (1) they executed the Indemnity Agreement; (2) Safeco issued bonds and received claims on those bonds; (3) Safeco demanded cash or collateral in the amount if its reserve; and (4) defendants did not provide cash or collateral. See Pl.'s Statement of Facts; Defs.' Mem. in Opp'n to Pl.'s Mot. for Partial Summ. J.

In this diversity action, the Court must look to Missouri state law to establish the validity and enforceability of indemnity agreements between a principal and a surety. The Court has not found,

and the parties do not cite, any Missouri cases addressing enforcement of a collateral security provision of a surety's indemnity agreement. Numerous courts in other states, however, have held that similar provisions require indemnitors to provide funds or post collateral security in the amount of the surety's reserve. See Safeco Ins. Co. of Am. v. Schwab, 739 F.2d 431 (9th Cir. 1984); International Fidelity Ins. Co. v. Vimas Painting Co., Inc., 2009 WL 485494, *4 (S.D. Ohio Feb. 26, 2009) (finding defendants required to pay funds in collateral security pursuant to the express terms of the indemnity agreement); Far West Ins. Co. v. J. Metro Excavating, Inc., 2008 WL 859182 (N.D. Ind. Mar. 28, 2008) (finding the indemnity agreement required defendants to indemnify surety after claimant demanded payment on bond) (citing American Motorists Ins. Co. v. United Furnace Co., Inc., 876 F.2d 293, 299-300 (2d Cir. 1989) (holding that an indemnity agreement with a surety should be construed as requiring the indemnitor to provide collateral security upon demand by the surety and prior to actual bond loss)).

Under the terms of the Indemnity Agreement, the event that triggered defendants' obligation to provide collateral was Safeco's demand for payment in the amount of the established reserve. Safeco argues that defendants have breached the clear terms of the Indemnity Agreement, and defendants do not dispute this. As of May 18, 2010, Safeco had established a reserve in the amount of $2,890,270, which it has subsequently lowered to $1,990,070, with respect to the claims it received on its performance bond obligations. See Rockenbach Aff. at ¶¶ 5-9. Pursuant to the terms of the Indemnity Agreement, Safeco made demand upon defendants to provide it with funds or collateral security in the amount of the reserve. Defendants have refused.

    B.    The Equitable Remedy of Specific Performance

By its motion for partial summary judgment, Safeco seeks injunctive relief to compel defendants to post collateral in the amount of Safeco's reserve. Specific performance, as sought by plaintiff, is purely an equitable remedy, governed by equitable principles. See Kopp v. Franks, 792 S.W.2d 413, 419 (Mo. App. 1990) (citing Seabaugh v. Keele, 775 S.W.2d 205, 207 (Mo. App.1989)). Under Missouri law, a decree for "specific performance is not a matter of right even to enforce the terms of a legal and binding contract." Id. at 420 (quoting Zoellner v. Carty, 585 S.W.2d 289, 291 (Mo. App. 1979)). Specific performance "is a matter of grace resting upon basic equities and residing within the sound discretion of the chancellor, depending in the last analysis, upon the facts of each particular case." Id.

Although defendants signed the Indemnity Agreement, agreeing that "[plaintiff] is entitled to injunctive relief for specific enforcement of the foregoing [collateralization] provision," it is for the Court to decide whether to grant the remedy of specific performance. "Specific performance of a contract is never decreed when its enforcement would be inequitable or unconscionable, or produce injustice or hardship or where the specific performance of the contract would operate oppressively as to either party, even though there is no sufficient ground for recision or cancellation." Kopp, 792 S.W.2d at 420 (quoting Zoellner, 585 S.W.2d at 291). Additionally, specific performance will not be ordered when the party claiming breach of contract has an adequate remedy at law. Laclede Gas Co. v. Amoco Oil Co., 522 F.2d 33, 39-40 (8th Cir. 1975) (interpreting Missouri law). It is well settled that a claim of entitlement to a decree of specific performance is defeated if the injured party has an adequate remedy at law, and if an award of damages will put the party in the same situation as if the agreement were specifically enforced. See Asbury v. Crawford Elec. Cooperative, Inc., 51 S.W.3d 152, 158 (Mo. App. 2001).

Safeco argues that an adequate remedy at law does not exist because it would deprive Safeco of its contractual prejudgment relief. Safeco cites case law in support of the proposition that for a surety in this situation, "it is not simply an issue of monetary loss; rather, it is an issue of impairing a surety's expectation and requiring it to suffer any loss, even if only temporary, associated with the performance of a primary obligor's duty." Travelers Cas. & Surety Co. v. Ockerlund, 2004 WL 1794915, *5 (N.D. Ill. Aug. 6, 2004). Several courts have found that the law favors protecting a surety's right to collateralization by granting specific performance. These courts find that although damages might be available to the surety in the future, the surety would be deprived of its contractual right to be placed in funds to be used to pay claims and expenses incurred on the bonded projects. In such cases, as in this case, the surety bargained for a collateral security clause to protect it from the impending risks of liability once a claim had been made on the bond. See Far West Ins. Co., 2008 WL 859182 at *8 (citing cases); see also American Motorists Ins., 876 F.2d at 293 (concluding that the surety was entitled to collateral security after demand had been made on bond); Schwab, 739 F.2d at 433-34 (reversing district court and interpreting a similar collateral security provision as providing for collateral security after a demand has been made against the bond); Travelers Cas. & Sur. Co. v. Southwest Contracting, Inc., 2006 WL 276942 **2-3 (E.D. Mo. Feb. 2, 2006) (granting specific performance of collateral security provision of general indemnity agreement).

The plain language of the Indemnity Agreement requires defendants to pay Safeco, upon demand, an amount sufficient to cover all exposure under the bonds issued on behalf of Lake Asphalt. See Indemnity Agreement at 1. This includes all loss, costs, and expenses of whatsoever kind and nature. Id. Courts have required indemnitors to post collateral security under similar language, and routinely grant motions for summary judgment in favor of a surety for specific performance of the

collateral security obligation. See, e.g., Fidelity & Deposit Co. of Md. v. D.M. Ward Constr. Co., Inc., 2008 WL 2761313 at *2 (D. Kan. July 14, 2008) (citing cases).

The Court finds that Safeco is entitled to the equitable remedy of specific performance of its contractual right to collateralization in the amount of its reserve. As the Ninth Circuit has observed, sureties are ordinarily entitled to specific performance of collateral security clauses. See Schwab, 739 F.2d at 433. "If a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced." Id. (quoting Marine Midland Tr. Co. v. Alleghany Corp., 28 F. Supp. 680, 683-84 (S.D.N.Y. 1939)). Safeco contracted for the right to be placed in funds to be used to pay claims and expenses incurred on the bonded projects. This expectation would be impairing this if Safeco were required "to suffer any loss, even if only temporary, associated with the performance of the primary obligor's duty." Ockerlund, 2004 WL 1794915 at *6. While Safeco might be entitled to an award of damages after trial of this matter, the Court finds damages are not an adequate remedy to enforce the collateral security provision of the Indemnity Agreement. Safeco bargained for collateral security to protect itself from the liability associated with the claims made against the bonds; an award of damages after trial does not adequately protect Safeco from this current risk.

C. The Amount of the Reserve

Defendants argue that other facts are relevant to the Court's determination of summary judgment. Specifically, defendants complain about the amount of the reserve set by Safeco: (1) they claim that the conditions that led to Lake Asphalt's default were due to the failure of the general contractors to complete work in a timely fashion, preventing Lake Asphalt from commencing work

at the contracted time; and (2) they claim that Safeco's reserve amount is more than what the defendants contend it should cost to complete the actual construction of the projects.

While it might be true that Lake Asphalt's default was caused by the general contractors' delays, this is immaterial to Safeco's motion for partial summary judgment. As stated in Fidelity & Deposit Co. v. D.M. Ward. Const. Co., Inc., the issue currently before the court is not whether plaintiff is entitled to an award of damages. Rather, the Court only determines whether defendants must post collateral security in accordance with the Indemnity Agreement. Id., 2008 WL 2761314 at *3 n.2. To the extend defendants have viable claims against the general contractors, those claims are set forth in the third-party complaint filed by defendants. The existence of these claims does not defeat Safeco's right under the Indemnity Agreement to have cash or collateral deposited by the defendants to secure Safeco for its losses and expenses resulting from the issuance of bonds on behalf of Lake Asphalt.

Also, the Court is not persuaded by defendants' argument that the reserve is too high, and therefore they should not be required to post collateral. Safeco detailed the process by which it set the reserve in the affidavit of Kenneth W. Rockenbach. See Rockenbach Aff., Ex. C. Mr. Rockenbach is the Home Office Counsel for Liberty Mutual Surety and is responsible for handling claims made against bonds issued by Safeco, including the bonds at issue. Safeco based the amount of its reserve on anticipated and estimated loss and expense, and has subsequently lowered this amount. See id.; see also Pl.'s Response to Supplement to Defs.' Mot. in Opp'n to Pl.'s Mot. for Partial Summ. J. (Doc. 87). The Court cannot find any evidence of bad faith in the actions of Safeco in setting the reserve. Moreover, the only case law cited by defendants in support of their position is Centronics Corp. v. Genicom Corp., 562 A.2d 187, 193 (N.H. 1989). This case, out of the New

Hampshire state court, involves a contract for the sale of a business and the release of funds from escrow. Although it discusses the enforcement of good faith in the performance of a contract, nothing about the case supports defendants' position that they do not have to provide cash or collateral to plaintiff under the Indemnity Agreement.

The Court determines, based on uncontroverted facts, that plaintiff is entitled to specific performance as requested in Count IV of its complaint. The Court will enter partial summary judgment in favor of plaintiff.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for partial summary judgment on Count IV is **GRANTED**. [Doc. 52]

**IT IS FURTHER ORDERED** that pursuant to the terms of the General Agreement of Indemnity for Contractors, defendants shall pay or deposit collateral with plaintiff in the amount of $1,990,070.00 no later than September 8, 2011.

An order of partial judgment will accompany this memorandum and order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 5th day of August, 2011.