UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 4:10-CV-1160 CAS ) |
| LAKE ASPHALT PAVING & CONSTRUCTION, LLC, et al., | ) ) ) |
| Defendants/Third-Party Plaintiffs, | ) ) |
| v. | ) ) |
| McANINCH CORPORATION, et al., | ) ) |
| Third-Party Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on plaintiff Safeco Insurance Company of America's ("Safeco") motion for summary judgment on Count I for indemnity against defendants Lake Asphalt Paving & Construction, LLC; Gaines Construction, Inc.; Gaines Leasing & Investment, LLC; DGN, Inc.; William and Patricia Gaines; Keith and Jeannie Denney; Michael and Sandra Rogers; and Harold E. Neumann ("defendants"). Defendants oppose the motion, and it is fully briefed. For the following reasons, the Court will grant Safeco's motion for summary judgment.

**I.    Background**

This action arises out of two highway construction projects initiated by the Missouri Department of Transportation, known as the Route 54 project and the Route 36 project in Camden County, Missouri. Safeco issued payment and performance bonds, as surety, to defendant Lake

Asphalt Paving & Construction, LLC ("Lake Asphalt"), as principal, with respect to the construction projects. In connection with the projects, defendants entered into a General Agreement of Indemnity for Contractors ("Indemnity Agreement") with Safeco, under which defendants pledged to hold Safeco harmless from claims and other expenses incurred by Safeco in connection with the bonds.

Lake Asphalt defaulted on both projects. Pursuant to its performance bond obligations, Safeco contracted with other companies to complete the projects. In its motion for summary judgment, Safeco seeks indemnification for the losses and expenses it has incurred as a result of issuing bonds on behalf of Lake Asphalt and in enforcing Safeco's rights under the Indemnity Agreement.

## II.   **Legal Standard**

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir.), cert. denied, 528 U.S. 1063, (1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment." Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

## III. Facts[1]

On March 6, 2006, defendants executed the Indemnity Agreement in favor of Safeco. In reliance upon the Indemnity Agreement, Safeco, as surety, issued performance bonds and payment bonds on behalf of Lake Asphalt, as contractor, for various construction contracts including the following:

---

[1] This statement of facts is taken from Safeco's statement of uncontroverted facts in support of its motion for summary judgment on Count I for indemnity. See Doc. 113. In response, defendants did not include a statement of material facts as to which they contend a genuine issue exists as required by Local Rule 4.01(E). Defendants have not controverted Safeco's statement of uncontroverted material facts, and therefore these facts are deemed admitted. See E.D. Mo. L.R. 4.01(E).

Performance, Payment and Maintenance Bonds No. 6546165 dated May 19, 2008, each in the penal sum of $829,000 with the City of Osage Beach as Obligee, with respect to the Osage Beach Project ("Osage Beach Bonds").

Performance and Payment Bonds No. 6475121 dated November 1, 2007, each in the penal sum of $3,750,610.42 with Progressive Contractors, Inc. ("Progressive") as Obligee, with respect to the Route 36 Project ("Route 36 Bonds").

Performance and Payment Bonds No. 6546173 dated June 30, 2008, each in the penal sum of $4,053,658.61 with McAninch Corporation ("McAninch") as Obligee, with respect to the Route 54 Project ("Route 54 Bonds").

On January 28, 2011, Safeco received a payment bond claim from Strait-Line Construction, Inc. on the Osage Beach Project, which after investigation was settled. Safeco paid $6,710.74 to settle the payment bond claim of Strait-Line Construction, Inc.

By letter dated March 4, 2010, McAninch, the general contractor on the Route 54 project, declared Lake Asphalt to be in default and called upon Safeco to honor the obligations of its performance bond. Lake Asphalt acknowledged to Safeco that it was unable to complete the performance of the work or comply with its contractual obligations to McAninch and voluntarily abandoned the Route 54 project. Pursuant to its performance bond obligations, Safeco contracted with Magruder Paving, LLC ("Magruder") to complete the Route 54 project.

On March 17, 2010, Progressive, the general contractor on the Route 36 project, directed Lake Asphalt to begin work no later than March 29, 2010 and requested confirmation that Lake Asphalt could complete the work. Lake Asphalt acknowledged to Safeco that it was unable to complete the performance of the work or comply with its contractual obligations to Progressive on the Route 36 project and voluntarily abandoned that project.

Pursuant to its performance bond obligations, Safeco contracted with Magruder to complete the Route 36 project. Safeco paid Magruder $7,157,255.43 for the completion of the Route 36 and Route 54 projects.

During completion of these projects, Safeco received payments of $2,537,921.88 from Progressive and $3,178,295.69 from McAninch, for a total of $5,716,217.57. In light of the claims made on the bonds issued on behalf of Lake Asphalt and the proceedings in this case to enforce Safeco's rights under the Indemnity Agreement, Safeco employees traveled to Missouri to meet with representatives of Lake Asphalt, inspect Lake Asphalt's books and records, and attend the court ordered mediation in this case. As of October 31, 2011, Safeco had incurred travel expenses of $2,781.84 for its employees' travel. Safeco also paid $529.08 to Stanley Grimm, the mediator in this case.

In light of the claims made on the bonds issued on behalf of Lake Asphalt, Safeco retained an investigative agency, Cole Investigative Agency ("Cole"), to investigate the financial status of the defendants. Cole provided Safeco with information regarding defendants' assets, and Safeco has paid Cole $10,075.37 for its services.

In light of the claims made on the bonds issued on behalf of Lake Asphalt, Safeco retained an accounting firm, Boyle Consulting Group, Inc. ("Boyle") to assist it in reviewing the books and records of Lake Asphalt and in setting reserves for completing the Route 36 and Route 54 projects. As of October 31, 2011, Safeco had paid Boyle $5,585.76 for its services.

In light of the claims made on the bonds issued on behalf of Lake Asphalt, Safeco retained a consulting firm, Construction Consulting and Disbursement Services, Inc. ("CCDS"), to assist it in evaluating the in-place construction work of Lake Asphalt on the Route 36 and Route 54 projects,

to obtain bids from contractors for the completion of the work on those projects, to administer the completion of those projects, and to assist in defending claims made on any bonds issued on behalf of Lake Asphalt. As of October 31, 2011, Safeco had paid CCDS $80,352.30 for its services.

In light of the claims made on the bonds issued on behalf of Lake Asphalt, Safeco retained a law firm, Gilliland & Hayes, P.A. ("G&H"), to assist it with preparing and negotiating takeover agreements with Progressive and McAninch, preparing and negotiating the completion contracts with Magruder for those projects, assisting as needed with the administration of the completion of the projects, assisting with the resolution of payment bond claims on bonds issued on behalf of Lake Asphalt, and in enforcing Safeco's rights under the Indemnity Agreement against the defendants. As of October 31, 2011, Safeco had paid G&H $52,847.97 for these services.

The Indemnity Agreement (in the INDEMNITY TO SURETY section) obligates Indemnitors to pay Safeco, upon demand:

> All loss, costs and expenses of whatsoever kind and nature, including court costs, reasonable attorney fees (whether [Safeco] at its sole option elects to employ its own attorney, or permits or requires [Indemnitors] to make arrangements for [Safeco's] legal representation), consultant fees, investigative costs and any other losses, costs or expenses incurred by [Safeco] by reason of having executed any Bond, or incurred by it on account of any Default under this agreement by any of the [Indemnitors], or by reason of the refusal to execute any Bond. In addition the [Indemnitors] agree to pay to [Safeco] interest on all disbursements made by [Safeco] in connection with such loss, costs and expenses incurred by [Safeco] at the maximum rate permitted by law calculated from the date of each disbursement.

The Indemnity Agreement further states:

> An itemized statement of loss and expense incurred by [Safeco], sworn to and by an officer of [Safeco], shall be prima facie evidence of the fact and extent of the liability of the [Indemnitors] to [Safeco] in any claim or suit by [Safeco] against [Indemnitors].

As of October 31, 2011, the total of the performance and payment losses and expenses incurred by Safeco as a result of the claims made on the bonds issued on behalf of Lake Asphalt and to enforce Safeco's rights under the Indemnity Agreement was $7,316,138.49. From that amount, $5,716,217.57 received from McAninch and Progressive should be subtracted, resulting in Safeco's net losses and expenses of $1,599,920.92 as of October 31, 2011.

**IV. Discussion**

In its motion, Safeco states its contractual rights under the Indemnity Agreement entitle it to indemnity for its losses and expenses resulting from the bonds it issued on behalf of Lake Asphalt. "The contract of a principal to indemnify his surety is valid and will be enforced in accordance with its terms." National Surety Corp. v. Prairieland Constr. Inc., 354 F. Supp. 2d 1032, 1036 (E.D. Mo. 2004); see also Fidelity and Deposit Co. of Md. v. Fleischer, 772 S.W.2d 809 (Mo. Ct. App. 1989). Absent bad faith on the part of the surety, courts uphold the validity of indemnity provisions such as these. See National Surety Corp., 354 F. Supp. 2d at 1036; American Ins. Co. v. Gilbert, 319 F. Supp. 1315, 1318 (E.D. Mo. 1970).

    A.    Covenant of Good Faith and Fair Dealing

In response to the motion, defendants state that both the Route 54 and Route 36 projects had strict completion schedules. Because of delays attributable to the general contractors, the projects did not commence or proceed in accordance with those schedules, and Lake Asphalt was unable to complete the projects. Defendants state Lake Asphalt was not at fault, and the fault of the general contractors "has been overlooked." Defendants argue that Safeco "breached the covenant of good faith and fair dealing towards the defendants" by not pursuing defendants' claims against the general contractors. In support of this argument, defendants cite the affidavit of their attorney, Charles H.

Billings.[2] In his affidavit, Mr. Billings states his belief that defendants have meritorious claims against the general contractors on the projects. He states Safeco has refused to pursue the claims of defendants and has refused to assign the claims from Safeco to defendants so that defendants might pursue the claims. Billings Aff. at ¶¶ 5-7.

Under Missouri law, "[t]here is a promise implied in every contract not to prevent or hinder performance by the other party and a breach of this implied promise constitutes a breach of contract." Housley v. Mericle, 57 S.W.3d 360, 363 (Mo. Ct. App. 2001) (citations omitted). A claim for breach of the implied covenant of good faith and fair dealing is a contractual claim. Hardee's Food Sys., Inc. v. Hallbeck, 776 F. Supp. 2d 949, 952 (E.D. Mo. 2011) (citing Koger v. Hartford Life Ins. Co., 28 S.W.3d 405, 413 (Mo. Ct. App. 2000)). "In order to succeed on a breach of contract, a plaintiff must show the making of a valid enforceable contract between the plaintiff and defendant, the right of the plaintiff and obligation of the defendant under the contract, a violation by the defendant, and damages resulting to the plaintiff from the breach." Koger, 28 S.W.3d at 412 (cited case omitted). "The party claiming breach of the implied covenant of good faith must present substantial evidence that it has been violated." Schell v. LifeMark Hosps. of Missouri, 92 S.W.3d 222, 230 (Mo. Ct. App. 2002).

The Eighth Circuit has explained that to establish the existence of a question of material fact regarding breach of the duty of good faith and fair dealing in the summary judgment context, a party must present evidence tending to establish that the other party exercised its discretion "so as to evade the spirit of the transaction or so as to deny the other party the expected benefit of the contract."

---

[2]The affidavit itself is undated, and the notary block is dated December 20, 2001. For purposes of this motion, the Court will assume Mr. Billings signed the affidavit on December 20, 2011.

Stone Motor Co. v. General Motors Corp., 293 F.3d 456, 467 (8th Cir. 2002) (quoting Amecks, Inc. v. Southwestern Bell Tel. Co., 937 S.W.2d 240, 243 (Mo. Ct. App. 1996)). As applied to this case, to establish a question of material fact and avoid to summary judgment, defendants must show that Safeco exercised its discretion in completing the projects and not pursuing Lake Asphalt's claims against the general contractor to evade the spirit of the Indemnity Agreement or deny defendants the expected benefit of the contract. In resisting Safeco's motion for summary judgment, defendants have the burden to designate the specific facts that create a triable question of fact on this issue. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004).

As Safeco correctly points out, the only claims defendants assigned to Safeco were the claims of Lake Asphalt, the "contractor," not the claims of the remaining defendants.[3] (Reply at 5-6). Safeco disputes Mr. Billings' characterization of Lake Asphalt's claims against the general contractors as "meritorious," stating that the claims were extinguished when Lake Asphalt admitted default and abandoned the projects. Pl's SOF ¶¶ 5-6, 9; see also Letter from Lake Asphalt to McAninch, dated Mar. 8, 2010, attached to Compl. as Ex. 3 ("We regret to advise you that [Lake Asphalt] is unable to complete the performance of the work or comply with its contractual obligations on the [Route 54] project and is in default under the above Contract for the Project."). The merits of Lake Asphalt's purported claims against the general contractors is largely irrelevant to this analysis, however, as the Court need not determine whether Lake Asphalt was in default of the subcontracts to determine whether Safeco is entitled to indemnification for its losses and expenses. Under Missouri law, a surety may settle a claim in good faith even if the surety is

---

[3]In fact, the remaining defendants pursued those claims against the general contractors in this suit.

mistaken about its own liability. See Fidelity & Deposit Co. of Md. v. Fleischer, 772 S.W.2d 809 (Mo. Ct. App. 1989).

Moreover, the terms of the Indemnity Agreement provided that Safeco had the exclusive right to settle any claim made on the bonds "on the basis of belief of liability, expediency or otherwise." Indemnity Agreement at 1. Based on this language, and Missouri law, while Safeco could not act in bad faith, it could settle a claim based on its belief of liability. Faced with Lake Asphalt's admitted default and abandonment of the projects, Safeco solicited bids to complete the projects and entered into completion contracts with Magruder, the low bidder on both projects. Defendants have produced no evidence that the implied covenant of good faith has been violated. Defendants conclusory allegation that Safeco unfairly and in bad faith refused to assert Lake Asphalt's claims against the general contractors is not enough to avoid summary judgment.

Finally, although not addressed in the briefings, Safeco had no contractual obligation under the Indemnity Agreement (and defendants have no corresponding contractual right) to assign back to Lake Asphalt its allegedly meritorious claims against the general contractors. As the Eighth Circuit has said:

> "[Missouri] law does not allow the implied covenant of good faith and fair dealing to be an everflowing cornucopia of wished-for legal duties; indeed, the covenant cannot give rise to new obligations not otherwise contained in a contract's express terms." Glass v. Mancuso, 444 S.W.2d 467, 478 (Mo. 1969). The implied covenant simply prohibits one party from "depriv[ing] the other party of its expected benefits under the contract." Morton v. Hearst Corp., 779 S.W.2d 268, 273 (Mo. Ct. App. 1989).

Comprehensive Care Corp. v. RehabCare Corp., 98 F.3d 1063, 1066 (8th Cir. 1996). Assuming Lake Asphalt had meritorious claims against the general contractors, Safeco was under no obligation to assign these claims back to Lake Asphalt. The covenant of good faith and fair dealing cannot give

rise to this obligation. Safeco did nothing to deprive defendants of their expected benefits under the Indemnity Agreement.

There are no facts from which the Court could conclude that Safeco's conduct in soliciting bids to complete the projects and entering into completion contracts with Magruder, the admitted low bidder on both projects, breached the covenant of good faith and fair dealing. Safeco has not evaded the spirit of the transaction or denied defendants any expected contract benefit. Safeco is therefore entitled to judgment on its claim of indemnity.

B.   Safeco's Damages

Safeco attaches to its motion for summary judgment the affidavit of Assistant Vice-President, Nicholas D. Hyslop. In his affidavit, Mr. Hyslop details the payments made by Safeco on the bonded projects, and establishes Safeco's net loss and expenses of $1,599,920.92.

Safeco's uncontested evidence shows that it paid Magruder $7,157,255.43 for the completion of the Route 36 and Route 54 projects. Safeco received $2,537,921.88 from Progressive and $3,178,295.69 from McAninch.

As for its investigatory fees, attorneys' fees, and other expenses, Safeco seeks reimbursement of the $2,781.84 it paid to reimburse Safeco employees for travel expenses; $10,075.37 paid to Cole Investigative Agency; and $5,585.76 paid to accounting firm Boyle Consulting Group, Inc. In addition, Safeco retained consulting firm Construction Consulting and Disbursement Services, Inc. ("CCDS") to assist in evaluating the in-place construction work of Lake Asphalt on the projects, to obtain bids from contractors for the completion of the work, to administer the completion of those projects, and to assist in defending claims made on the bonds issued on behalf of Lake Asphalt. Safeco paid CCDS $80,352.30. Safeco also retained the law firm Gilliland & Hayes, P.A. to assist

with preparing and negotiating takeover agreements with Progressive and McAninch, preparing and negotiating the completion contracts with Magruder for those projects, assisting with administration of the completion of the projects, assisting with resolution of payment bond claims, and in enforcing Safeco's rights under the Indemnity Agreement. Safeco paid $52,847.97 in fees to Gilliland & Hayes, P.A. In addition, Safeco paid $529.08 to Stanley Grimm, the mediator in this case.

As part of its damages, Safeco is seeking indemnity for a payment bond claim of $6,710.74 from Strait-Line Construction, Inc. on the Osage Beach Project. The Osage Beach Project was Bond No. 6546165. See Pl. SOF, ¶¶ 2-4. The bond claim was made on January 28, 2011. Although Safeco's complaint leaves open the possibility of additional bond claims, the complaint does not list the Osage Beach performance and payment bonds as being part of this suit. See Compl. at ¶16. Nor has Safeco amended its complaint to add such claims. Upon careful review of the complaint, the Court finds that the allegations do not set forth a claim against the defendants on the Osage Beach payment bond. As no such claim has been separately pled, the Court will not consider any argument concerning this claim, and will deny Safeco indemnity of $6,710.74 paid to Strait-Line Construction, Inc.

Safeco calculated its total of the performance and payment losses and expenses as $7,316,138.49. From that amount, $5,716,217.57 is subtracted as having been received from McAninch and Progressive. The Court will subtract an additional $6,710.74 because it will not consider the payment bond on the Osage Beach Project. Therefore, Safeco's total losses and expenses on the performance bonds issued to Lake Asphalt are $1,593,210.18.

In addition, Safeco seeks prejudgment interest of nine percent per annum from the date of the respective payments made by Safeco. Interest due on an amount paid by a surety is governed

by Missouri Revised Statue § 433.050, which sets the statutory interest rate at ten percent per annum. See Mo. Rev. Stat. § 433.050. Safeco's claim meets the statutory requirements, so it is entitled to prejudgment interest under the state statute at the statutory rate of ten percent per annum from the time of its payments.

    C.    <u>Remaining Issue</u>

After entry of summary judgment on Count I of Safeco's complaint for indemnity, each of Safeco's four Counts against defendants has been resolved. Summary judgment was previously granted to Safeco on Count IV for specific performance, and Safeco voluntarily dismissed Counts II and III. In addition, the Court has previously entered summary judgment in favor of third-party defendant McAninch on defendants' third-party claims.

The sole issue remaining in this case is third-party defendant McAninch's counterclaims asserted against defendant Lake Asphalt. Although McAninch moved for summary judgment with respect to the third-party claims asserted against it by defendants, McAninch did not move for summary judgment on its counterclaim for breach of contract against defendant Lake Asphalt. McAninch's counterclaim against Lake Asphalt is still pending (Doc. 40).

This action is set for trial April 2, 2012. The Court will order McAninch to file a memorandum with the Court by March 5, 2012, notifying the Court whether it will proceed to trial with its counterclaim for breach of contract against Lake Asphalt.

**V.**    **<u>Conclusion</u>**

The Court determines, based on uncontroverted facts, that Safeco is entitled to summary judgment on Count I for indemnity in the amount of $1,593,210.18, together with prejudgment

interest at the applicable rate of ten percent per annum from the date of each of Safeco's payments. The Court will enter summary judgment in favor of Safeco on Count I.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Safeco Insurance Company of America's Motion for Summary Judgment on Count I for Indemnity Against Defendants is **GRANTED**. [Doc. 111]

**IT IS FURTHER ORDERED** that counter claimant McAninch Corporation shall file a memorandum with the Court by March 5, 2012, notifying the Court whether it will proceed to trial on April 2, 2012 with its counterclaim for breach of contract against counterclaim defendant Lake Asphalt Paving & Construction, LLC.

An appropriate partial judgment will accompany this memorandum and order.

*(signature)*
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  29th  day of February, 2012.